H. H. DEE, Appellee, v. TAMA COUNTY et al., Appellants.

No. 40282.

APRIL 14, 1930.

*Vernon F. Kepford,* for appellants.

*M. W. Hyland,* for appellee.

ALBERT, J.—Tama County sought to avail itself of the provisions of Chapter 242, Code, 1924, for the purpose of the improvement of its roads. A special election was called in 1926, at which it was voted that the county should issue $504,000 in

primary road bonds and $933,000 in county road bonds. No question is raised as to the regularity of this election, and, except in an evidentiary way, the primary road bonds above referred to are not involved in this action.

Prior to the 4th day of July, 1929, the county had issued and sold $650,000 in county road bonds, and, just prior to the commencement of this action, on the 4th day of October, 1929, the county proposed to issue and sell a further sum of $193,000 in road bonds; and it is to prevent the issuance and sale of these latter bonds that plaintiff, as a taxpayer in said county, brings this action, in his own behalf and in behalf of other taxpayers in the county, to enjoin the sale and issuance of these bonds. The question of whether or not the plaintiff is entitled to relief turns largely on the construction of the legislation which existed at the time the election was held, authorizing the issuance of these bonds, and the legislation that has been passed since that time.

These bonds were voted under the provisions of Chapter 242, Code, 1924. Under that chapter, one of the questions submitted was (Section 4761, Subdivision 4):

"And shall all the county road, drainage, and bridge funds coming into the county treasury from taxes and all other sources, except such as are required for the maintenance of such roads, the construction of bridges and miscellaneous expenditures, be appropriated and used for the payment of said county road bonds and interest thereon."

"5. And shall the board of supervisors of the county be authorized to levy and collect taxes on all the taxable property of the county from year to year, in amounts sufficient to pay any part of the principal and the interest on said bonds of both classes, as the same mature, which funds so appropriated are insufficient to pay."

Section 4768 provides:

"The board of supervisors shall levy and collect from year to year a sufficient amount of taxes which, together with said appropriated funds, shall be sufficient to pay the bonds herein authorized to be issued, and the interest thereon as the same mature, for primary or county roads or both, as the case may be, and none of said funds so to be appropriated or taxes to be

levied and collected shall be used for any other purpose than the payment of said bonds and interest until the same are fully paid."

"4769. No amount of additional taxes herein authorized for the payment of primary or county road bonds and/or interest thereon, shall be levied unless and until all the funds and maximum tax levies herein pledged respectively for such purposes have been exhausted."

The funds pledged for the payment of these bonds are provided by Section 4635, Code, 1924, which authorizes the board of supervisors annually to levy a five-mill tax for bridges and culverts, a one-mill tax for county roads, and a one-mill tax for county drainage, on all taxable property in the county.

To summarize the situation, then, at this point: At the time this election was held and the bonds were authorized, their payment was provided for by utilization of the taxes realized from the above levies; and in the event that said levies did not prove sufficient to liquidate the bonds, the board of supervisors was authorized to levy a sufficient amount of taxes to retire the bonds and interest, under Section 4768.

But their right to so levy this latter tax was limited by the provisions of Section 4769. There was no right to make a direct levy to pay these bonds except and unless all of the funds and maximum tax levies therein pledged had been exhausted. In other words, the county was prohibited from making a direct levy for the payment of these bonds until it had first exhausted the funds and the maximum levies authorized by statute.

This stood as the law until the 4th day of July, 1929, when Chapter 20 of the Acts of the Forty-third General Assembly became operative. One of the provisions of the latter named act of the legislature provided for the repeal of the aforesaid Section 4635, Code, 1924, thus taking away the very funds which had been pledged to the payment of the bonds authorized; although the aforesaid Sections 4678 and 4679 were not directly repealed. At this point, therefore, there would be no taxes coming in from either the bridge, county, or drainage funds that could be applied to the retirement of the bonds already issued. The Acts of the Forty-third General Assembly, in effect, if not in words, swept out of existence the very method of liquidation of the bonds which existed at the time they were issued. The

Forty-third General Assembly provided for a specific levy of two mills on the dollar for road construction purposes, with an additional option to the board to levy an additional tax for construction purposes, not to exceed two and one-half mills on the dollar. It then pledged 35 per cent of the funds thus raised by these levies to be expended on local county roads "which the board finds are of the greatest utility to the people of the various townships." The balance, or 65 per cent of the gross levies, was pledged, first, to the payment of the cost of constructing the roads, and second, "to the payment of the outstanding county road bonds of the county authorized and issued under Chapter 242, Code, 1927, to the extent heretofore pledged."

It is under the latter provision of Section 11 of Chapter 20 of the Acts of the Forty-third General Assembly that the outstanding county road bonds theretofore issued are to be liquidated, and, therefore, all bonds that were authorized and issued before the 4th day of July, 1929, will be taken care of by the funds derived under this act. A careful reading of the act shows, however, that no provision whatever was made for the liquidation of the issue which the board now seeks to make in this case. The act itself specifically provides for and authorizes payment of county road bonds "authorized and issued under Chapter 242." This is a limitation on the purposes for which the fund created by this act of the Forty-third General Assembly can be utilized; and it is obvious that the bonds here sought to be issued cannot be paid from any funds derived under the act of the Forty-third General Assembly, and there is no provision that has been called to our attention, or which we have been able to find, which would authorize the creation of a fund or a levy of any taxes to pay these bonds, were they to be now issued. In fact, the whole tenor of Chapter 20 of the Acts of the Forty-third General Assembly seems to be a change from the old system of handling the county road proposition to a new system, which is elaborated in the latter named act, with an effort on the part of the legislature to take care of bonds which had been issued prior to the time the act went into effect.

We are not passing on the question of whether or not, after the Acts of the Forty-third General Assembly went into effect, a proceeding could be started and an election held for the purpose of issuance of county or secondary road bonds, but are

limiting our discussion to the question of whether or not these bonds, although originally legally authorized, were in fact issued until after the later law went into operation, which wholly destroyed the sources of liquidation provided for in the original plan.

It is our opinion, so far as the questions involved herein are concerned, that the $650,000 in bonds authorized by this election, which were issued prior to the 4th day of July, 1929, are to be liquidated from the sources marked out by the Forty-third General Assembly. We are further of the opinion that there are no methods or means now provided for the liquidation of any bonds authorized by the election in 1926 and issued after the 4th day of July, 1929. This being our conclusion, we find that we are in accord with the ruling of the district court on this proposition, and that the plaintiff was entitled to the relief demanded.—*Affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.